IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CLARITY RESEARCH AND
CONSULTING, LLC,
        Plaintiff,

-vs-

OMNIWEST, LLC, MARC
JABLONSKI, SCOTT YOST, and EMIR
MUHOVIC.
        Defendants.

CAUSE NO.: A-17-CA-00203-SS

# ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant OmniWest, LLC (OmniWest)'s Motion to Dismiss [#9], Plaintiff Clarity Research and Consulting, LLC (Clarity)'s Response [#17] in opposition, OmniWest's Reply [#19] in support, and Clarity's Sur-Reply [#20] in opposition. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

## Background

Clarity brings this action against OmniWest[1] for breach of contract, misappropriation of trade secrets, tortious interference with contracts, tortious interference with prospective business relationships, business disparagement, and conspiracy. *See* Not. Removal [#1-1] Ex. A (Orig. Pet.) ¶¶ 35–50.

---

[1] In addition to OmniWest, Clarity's originally brought claims against Marc Jablonski, the CEO and managing member of OmniWest; Scott Yost, a member of OmniWest; and Emir Muhovic, President of 360 Wellness, LLC. However, on March 24, 2017, Clarity moved to dismiss its claims against Jablonski, Yost, and Muhovic without prejudice. *See* Unopposed Mot. Dismiss Without Prejudice [#16] at 1. The Court granted Clarity's motion on March 28, 2017. *See* Order of Mar. 28, 2017. Thus, OmniWest is the sole remaining defendant.

I.   **Facts**

Clarity is a scientific and clinical research company, incorporated under Delaware law, that partners with healthcare providers to develop, administer, and execute research studies. *Id.* ¶ 13. Its principal place of business is located in Austin, Texas. *Id.* ¶ 1.

OmniWest is an Arizona limited liability company that "coordinates and administers medical study services between companies that develop medical studies and participating healthcare providers." Mot. Dismiss [#9] at 2. Its principal place of business is located in Scottsdale, Arizona. Orig. Pet. ¶ 2.

OmniWest entered into a Subcontractor Master Management and Administrative Services Agreement (Agreement) with Safe Harbor Compliance and Clinical Services, LLC (Safe Harbor), effective August 1, 2015. Resp. [#17] at 3; *see id.* [#17-1] Ex. A (Agreement). Safe Harbor "supervises and coordinates the management and administration of healthcare research and medical study services for various healthcare provider customers . . . ." Agreement at 1. As part of the Agreement, OmniWest was "to assist [Safe Harbor] with the coordination, supervision, management and administration" of certain healthcare clinical trial studies. *Id.* The Agreement lists OmniWest's "Duties and Responsibilities":

[. . .]

(b) . . . [OmniWest] shall use reasonable efforts to perform its duties in a competent and timely fashion.

[. . .]

(d) [OmniWest] represents and warrants . . . each professional who shall provide professional services for the Studies . . . shall (i) be, as applicable, duly licensed as required by state and federal law, (ii) have certification, training and credentialing appropriate for the professional services performed . . . , and (iii) have professional insurance coverage . . . .

(e) . . . [OmniWest] shall procure and maintain[ ] comprehensive general liability insurance coverage and workers' compensation insurance coverage with insurance carriers . . . .

*Id.* at 2; *see also* Reply [#19] at 2. In general, the Agreement required OmniWest to "**USE REASONABLE JUDGMENT IN RENDERING THE SERVICES FOR [SAFE HARBOR]** . . . ." Agreement at 3. The Agreement also included a "Confidential Information" clause, prohibiting OmniWest and Safe Harbor from disclosing, using, copying, or permitting to be copied confidential information; a "Patient Information" clause, requiring OmniWest and Safe Harbor to "comply with all applicable privacy and security laws and regulations"; and a "Materials" clause, providing OmniWest will submit for review and approval all materials of Safe Harbor before using, distributing, or display any such materials. *Id.* at 3; *see also* Sur-Reply [#20] at 2. Finally, the Agreement included the following forum selection clause:

> This Agreement shall be construed and enforced in accordance with the laws of the State of Texas, excluding any conflict of law provision which would refer to the law of another jurisdiction, and the Parties agree that venue of any litigation under this Agreement shall be in Travis County, Texas.

Agreement at 6.

Effective January 1, 2016, OmniWest, Safe Harbor, and Clarity entered in a First Amendment to the Agreement (Amendment). Resp. [#17-1] Ex. B (Amendment). The Amendment assigned the Agreement from Safe Harbor to Clarity and incorporated a "Code of Conduct": OmniWest "hereby consents to the assignment of the Agreement to [Clarity] such that all references to [Safe Harbor] in the Agreement and Code of Conduct . . . shall be changed to Clarity upon assignment of the Agreement from [Safe Harbor] to Clarity . . . ." Amendment at 1–2.

After the parties executed the Amendment, Mark Jablonski and Scott Yost, members of OmniWest, visited Clarity's offices in Austin, Texas, approximately five times. Resp. [#17-1]

(Hurwitz Aff.) ¶ 7. The purpose of these meetings was to discuss: "(1) issues related to the Agreement between Clarity and OmniWest; (2) business operations of Clarity and OmniWest; (3) training on studies and protocols for OmniWest; (4) business opportunities for Clarity and OmniWest; and (5) administrative issues related to Clarity and OmniWest's relationship." *Id.* Further, in performing its duties under the Agreement, OmniWest recruited no less than 21 compensated study investigators located in Texas. *Id.* ¶ 8.

In late 2016, Clarity claims it discovered OmniWest violated the Agreement. Orig. Pet. ¶¶ 21–33. Specifically, Clarity alleges OmniWest used Clarity's confidential customer/investigator information and lists to attempt to lure away its customers/investigators to its competitors and has made "disparaging remarks to [Clarity's] customers/investigators indicating that it is going out of business, no longer conducting research studies, and is filing for bankruptcy." *Id.* ¶¶ 25, 28.

## II. Procedural Posture

Clarity filed its Original Petition in state court on January 20, 2017, alleging breach of contract, misappropriation of trade secrets, tortious interference with contracts, tortious interference with prospective business relationships, business disparagement, and conspiracy claims against OmniWest, Jablonski, Yost, and Muhovic. *See* Orig. Pet. ¶ 35–49. OmniWest timely removed to this Court on March 3, 2017. As noted above, on March 28, 2017, this Court granted Clarity's unopposed motion to dismiss its claims against Jablonski, Yost, and Muhovic without prejudice.[2] *See* Order of Mar. 28, 2017 [#18] at 1.

On March 10, 2017, OmniWest moved to dismiss Plaintiff's Original Petition for lack of personal jurisdiction and improper venue under 28 U.S.C. § 1406. Mot. Dismiss [#9] at 1. In the

---

[2] Because Emir Muhovic is no longer a party to this lawsuit, his Motion to Dismiss for Lack of Jurisdiction [#10] is DISMISSED AS MOOT.

alternative, OmniWest moved to transfer the case under 28 U.S.C. § 1404(a) or dismiss the case under the doctrine of *forum non conveniens*. *Id.* The motion has been fully briefed and is now ripe for this Court's review. In addition, although not discussed by either party, the Court will determine whether subject matter jurisdiction exists over this dispute.

## Analysis

### I. Personal Jurisdiction

OmniWest moves to dismiss Clarity's Original Petition based on lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). To determine whether a federal district court has personal jurisdiction over a nonresident defendant, the court considers first whether exercising jurisdiction over the defendant comports with due process. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). If the requirements of due process are satisfied, the court then determines whether the exercise of jurisdiction is authorized by the jurisdictional "long-arm" statute of the state in which the court sits. *Id.* Because the Texas long-arm statute has been interpreted as extending to the limit of due process, the two inquiries are the same for district courts in Texas. *Id.*; *see also* TEX. CIV. PRAC. & REM. CODE §§ 17.001–.093.

The Due Process Clause requires a nonresident defendant be properly subject to the personal jurisdiction of the court in which the defendant is sued. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). The Supreme Court has articulated a two-pronged test to determine whether a federal court may properly exercise jurisdiction over a nonresident defendant: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

A defendant's "minimum contacts" may give rise to either general personal jurisdiction or specific personal jurisdiction, depending on the nature of the suit and the defendant's relationship to the forum state. *Freudensprung*, 379 F.3d at 343. A court exercises general jurisdiction over the defendant if the defendant has "continuous and systematic contacts" with the forum, regardless of whether those contacts are related to the cause of action asserted in the case. *Id.* Specific jurisdiction, by contrast, is based on the proposition "that 'the commission of some single or occasional acts of the [defendant] in a state' may sometimes be enough to subject the [defendant] to jurisdiction in that State's tribunals with respect to suits relating to that in-state activity." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Int'l Shoe*, 326 U.S. at 318).

The plaintiff has the burden of making a prima facie case by showing a defendant has sufficient "minimum contacts" with the forum state to justify the state's exercise of either specific or general jurisdiction. *Freudensprung*, 379 F.3d at 343. If the plaintiff does so, the burden shifts to the defendant to show such an exercise offends due process because it is not consistent with traditional notions of fair play and substantial justice. *Id.* Finally, when a court rules on a 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept the non-moving party's jurisdictional allegations as true and resolve all factual disputes in its favor. *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999).

### A.    General Jurisdiction

OmniWest claims it lacks the substantial, continuous, or systematic contact with Texas required to establish general personal jurisdiction. Mot. Dismiss [#9] at 4–5. OmniWest is incorporated under Arizona law and its principal place of business is in Arizona. Orig. Pet. ¶ 2.

OmniWest's contacts with Texas include the following: OmniWest entered into the Agreement with Clarity, a company based in Texas; OmniWest performed at least part of that Agreement in Texas; and OmniWest's agents made approximately five trips to Texas related to the Agreement. *See* Hurwitz Aff. ¶¶ 5, 7–8.

The Court finds these contacts with Texas do not amount to the continuous and systematic contracts required for this Court to exercise general personal jurisdiction over OmniWest. Furthermore, Clarity does not argue this Court has general personal jurisdiction over OmniWest. *See* Resp. [#17] at 9–11.

B.  **Specific Jurisdiction**

In the Fifth Circuit, courts generally look to three factors in analyzing specific jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

1.  **Purposeful Availment**

A court may exercise specific jurisdiction over a nonresident defendant who "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Electrosource, Inc. v. Horizon Battery Techns., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (internal citation omitted). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* (internal citation omitted). Because specific jurisdiction is analyzed

on a claim-by-claim basis, the Court will first look to Clarity's contract claim and then to its tort claims. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006).

### a.     Contract Claim

In contract cases, the existence of a contract between a plaintiff and a nonresident defendant alone is not sufficient to satisfy the purposeful availment prong. *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) ("[M]erely contracting with a resident of the forum state does not establish minimum contacts."). However, courts "consistently look[ ] to the place of contractual performance to determine whether the making of a contract with a Texas resident is sufficiently purposeful to satisfy minimum contacts." *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992); *see also Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd*, 993 F.2d 1201, 1205 (5th Cir. 1993) ("[The] place where the contract is performed is a 'weighty consideration . . . .'") (internal citation omitted). In addition, "the place of contracting and the law governing the contract, while not necessarily determinative, are relevant factors for determining purposeful activity." *Jones*, 954 F.2d at 1069.

Clarity argues OmniWest purposefully availed itself of the privileges of conducting business in Texas because Jablonski and Yost, as agents of OmniWest, travelled to Texas for meetings regarding the Agreement, and OmniWest's performance under the Agreement included recruitment of "no less than 21 compensated study investigators practicing medicine in Texas."[3] Resp. [#17] at 4–5, 10. Further, the Agreement includes a forum selection clause stating the Agreement shall be enforced under Texas law and any litigation under the Agreement shall be in

---

[3] OmniWest argues it "negotiated and signed the contract in Arizona and performed all services in Arizona." Mot. Dismiss [#9] at 6; *see id.* [#9-1] Ex. 1 (Jablonski Decl.) ¶ 36; *see id.* [#9-2] Ex. 2 (Yost Decl.) ¶ 26. This statement, however, directly contradicts Clarity's allegation that at least part of the Agreement was performed in Texas. *See* Hurwitz Decl. ¶ 8; *see also* Resp. [#17] at 4–5, 10. At this stage, "conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Johnston v. Multidata Sys. Intern. Corp.* 523 F.3d 602, 609 (5th Cir. 2008) (internal citation omitted).

Texas. Agreement at 6. Because OmniWest attended meetings in Texas regarding the Agreement, the Agreement was partially performed in Texas, and the Agreement is governed by Texas law, the Court finds OmniWest purposefully availed itself of the privileges of conducting business in Texas.

### b. Tort Claims

"When a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state . . . to exercise personal [ ] jurisdiction over the tortfeasor . . . ." *Guidry*, 188 F.3d at 628. Additionally, "[e]ven an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Id.* (internal citation omitted).

Clarity contends OmniWest engaged "in conduct designed to disrupt Clarity's business by providing false information to third parties about Clarity's business, interfering with Clarity's relationships with its customers and investigators, and engaging in egregious self-dealing," all of which "caused harm to Clarity in Texas . . . ." Hurwitz Decl. ¶ 9; *see also* Resp. [#17] at 6. Further, Clarity pleads both OmniWest's efforts to spread defamatory statements regarding Clarity's business and its tortious interference with Clarity's relationships took "place in Texas, where the Clarity Research studies are analyzed." Orig. Pet. ¶¶ 29, 33. The Court finds these allegations are sufficient to satisfy the purposeful availment requirement. *See Guidry*, 188 F.3d at 628.

## 2. Nexus between Cause of Action and Contacts

To establish personal jurisdiction over a nonresident defendant, a plaintiff must also show his cause of action arises out of or results from the defendant's forum-related contacts. *See Gerber*, 587 F.3d at 759. Clarity argues its breach of contract and tort claims arise from the duties and obligations of OmniWest under the Agreement, which was discussed and at least partly performed in Texas. *See* Hurwitz Decl. ¶ 9; *see also* Resp. [#17] at 4–6, 10. Under these facts and circumstances, the Court finds there is a nexus between Clarity's causes of action and OmniWest's contacts with Texas.

## 3. Fair and Reasonable

Because Clarity successfully established OmniWest's minimum contacts and the connection between those contacts and Clarity's causes of action, the burden shifts to OmniWest to show that exercising jurisdiction would be unfair or unreasonable. To determine whether the exercise of personal jurisdiction is unreasonable, the court examines (1) the defendant's burden, (2) the forum state's interest, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the state's shared interest in fundamental social policies. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

OmniWest claims the burden of having to litigate this case in Texas is great because OmniWest's principal place of business is in Arizona and all of the witnesses, evidence, and other documents are in Arizona. Mot. Dismiss [#9] at 8. OmniWest also states "none of the work in dispute occurred in Texas . . . ," and further argues the state of Texas does not have a unique interest in this case because "no link exists between Clarity's allegations and Texas." *Id.* However, as described above, Clarity has alleged part of the Agreement was performed in Texas

and has sufficiently shown a nexus exists between its causes of action and OmniWest's contacts in Texas. Therefore, after weighing the appropriate factors, the Court finds exercising personal jurisdiction over OmniWest is fair and reasonable.

In sum, the Court rejects OmniWest's argument that the case should be dismissed due to lack of personal jurisdiction.

## II. Improper Venue

OmniWest also argues this case should be dismissed for improper venue under 28 U.S.C. § 1406(a) or, in the alternative, transferred under 28 U.S.C. § 1404(a) or dismissed under the doctrine of *forum non conveniens*. Mot. Dismiss [#9] at 8–11.

### A. Dismissal under § 1406

Section 1406 requires a district court to dismiss "a case laying venue in the wrong division or district . . . ." 28 U.S.C. § 1406(a). The question of whether venue is "wrong" is generally governed by 28 U.S.C § 1391, which states venue is only proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Further, "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 577 (2013). Thus, "a case filed in a district that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3)." *Id.*

Here, venue is proper because a substantial part of the events giving rise to Clarity's claims occurred in this District. Jablonski and Yost visited Clarity's offices in Austin, Texas, five times to discuss the Agreement. Hurwitz Aff. ¶ 7. In addition, part of the performance of the Agreement took place here and Texas law governs the parties' obligations under the Agreement. *Id.* ¶ 7; *see also* Agreement at 6. Thus, a substantial part of the events giving rise to Clarity's claims occurred in the Western District of Texas, making venue proper under § 1391(a)(2).

**B.     Transfer under § 1404(a)**

In the alternative, OmniWest moves to transfer this action under § 1404(a). Clarity argues transfer is inappropriate because the Agreement's forum selection clause governs venue.

Section 1404(a) states, "[f]or the convenience of the parties, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought . . . ." Generally, a court considering a § 1404(a) motion must "determine whether there is an adequate alternative forum and, if so, decide which forum is best-suited to the litigation by considering a variety of private- and public-interest factors and giving deference to the plaintiff's choice of forum." *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016). The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen, AG*, 371 F.3d 201, 203 (5th Cir. 2004). The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will

govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or applying the foreign law. *Id.*

However, the Supreme Court in *Atlantic Marine* explained that the existence of a forum selection clause alters this analysis in two ways. *Atl. Marine*, 134 S. Ct. at 579. "First, the plaintiff's choice of forum merits no weight," because "the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." *Id.* at 580. Second, the "district court may consider arguments about public-interest factors only," because the private-interest factors "weigh entirely in favor of the preselected forum . . . ." *Id.* at 582. Further, a valid forum selection clause is "given controlling weight in all but the most exceptional cases." *Id.* (internal citation omitted).

Therefore, the Court must decide whether a valid forum selection clause exists and, if one does, then consider the public interest factors of the § 1404(a) analysis.

### 1. The Agreement Includes a Valid Forum Selection Clause.

To determine if a forum selection clause applies to the present case, the Court makes two separate inquires: (1) whether the contact is valid and the forum-selection clause is enforceable, and (2) whether the present case falls within the scope of the forum-selection clause. *Sabal Ltd. LP v. Deutsche Bank AG*, No. 5:16-CV-300-DAE, 2016 WL 5080385, at *5 (W.D. Tex. Sep. 19, 2016); *Mendoza v. Microsoft, Inc.*, 1 F. Supp. 3d 533, 542 (W.D. Tex. 2014).

#### a. The Agreement's Forum Selection Clause is Enforceable.

Forum selection clauses are presumptively valid and enforceable. *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997). Usually, the party disputing enforceability tries to overcome the presumption by showing the clause is "unreasonable under the circumstances," which depends on the following factors:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will

> for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Id.* at 963 (internal quotations and citation omitted).

Here, OmniWest and Clarity both signed the Amendment assigning the Agreement from Safe Harbor to Clarity. Amendment at 3. At that point, the parties became bound by the Agreement and its forum selection clause. Further, OmniWest does not dispute that the Agreement's forum selection clause is enforceable. *See* Reply [#19] at 1–4 (OmniWest only argues the Agreement's forum selection clause does not apply to Clarity's claims). Therefore, the Court finds the forum selection clause is enforceable against OmniWest and Clarity.

        **b.    Clarity's Claims Fall Within the Scope of the Agreement's Forum Selection Clause.**

Next, the Court "look[s] to the language of the parties' contract to determine which causes of action are governed by the forum selection clause." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 616 (5th Cir. 2007) (internal citation omitted); *see also Aerus LLC v. Pro Team, Inc.*, No. Civ. A. 3:04–cv–1985–M, 2005 WL 1131093, at *1 (N.D. Tex. May 9, 2005) ("The court must examine the language of the contract to determine which causes of action are governed by the forum selection clause."). "If the substance of the plaintiff's claims, stripped of their labels, does not fall within the scope of the forum selection clause, the clause cannot apply." *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998). Accordingly, a forum selection clause can apply to both contract and tort claims. *See id.* ("We find no persuasive support for [a contract/tort] distinction."); *see also JetPay Merch. Servs., LLC v. Merrick Bank Corp.*, No. 3:13-CV-3101-L-BN, 2014 WL 798373, at *2 (N.D. Tex. Feb. 28,

2014) ("The scope of a forum selection clause is not limited solely to claims for breach of the contract that contains it.")

Here, the forum selection clause states,

> The Agreement shall be construed and enforced in accordance with the laws of the State of Texas, excluding any conflict of law provision which would refer to the law of another jurisdiction, and the Parties agree that venue of *any litigation under this Agreement* shall be in Travis County, Texas.

Agreement at 6 (emphasis added). As such, if the dispute arises under the Agreement, the dispute is within the scope of the forum-selection clause and the clause controls the venue-transfer inquiry.

Clarity brings five claims against OmniWest: breach of contract, misappropriation of trade secrets, tortious interference with contracts, tortious interference with prospective business relationships, business disparagement, and conspiracy. Because all of these claims arise under the Agreement, they fall within the scope of the forum selection clause.

### i. Contract Claim

OmniWest argues the forum selection clause in the Agreement does not cover the instant action because Clarity's breach of contract claim does not arise under the parties' duties as described in the Agreement. Resp. [#19] at 1–4. The Court disagrees. The Agreement requires OmniWest to: "use reasonable judgment in rendering [its] services"; not disclose, use, copy, or permit to be copied Clarity's confidential or proprietary information; "comply with all applicable privacy and security laws and regulations"; and submit for review and approval all materials of Clarity before using, distributing, or displaying such materials. Agreement at 2–3.

Clarity claims OmniWest violated these duties in the Agreement by "intentionally and fraudulently mispresent[ing] the services and products provided by [Clarity] in order to benefit themselves and their business . . . ." Orig. Pet. ¶ 21. Clarity also alleges OmniWest used

Clarity's confidential customer/investigator information and lists in violation of the Agreement. *Id.* ¶ 25. These allegations are directly tied to provisions in the Agreement. Therefore, the Court finds Clarity's breach of contract claim arises under the Agreement.

### ii. Tort Claims

Although the Fifth Circuit has not articulated a specific test for determining when tort claims fall within the scope of a contract's forum selection clause, district courts within this circuit usually look to three rules: (1) whether the tort claims "ultimately depend on the existence of a contractual relationship between the parties"; (2) whether "resolution of the claims relates to interpretation of the contract"; and (3) whether the claims "involv[e] the same operative facts as a parallel claim for breach of contract." *AlliantGroup, L.P. v. Mols*, No. CV H-16-3114, 2017 WL 432810, at *7 (S.D. Tex. Jan. 30, 2017) (internal citation omitted); *see also Chalos & Co., P.C. v. Marine Managers, Ltd., et al.*, No. 14-2441, 2015 WL 5093469, at *5 (E.D. La. Aug. 28, 2015) (applying three rules to forum selection clause stating, "[a]ny dispute arising out of the interpretation or the performance of this Contract").

Here, Clarity's tort claims depend on the existence of the contractual relationship between Clarity and OmniWest and involve the same operative facts as Clarity's breach of contract claim. For instance, Clarity argues OmniWest misappropriated Clarity's confidential information and trade secrets "to jump start [a] new, directly competitive entity." Orig. Pet. ¶ 26. Because the Agreement contains a Confidential Information provision, Clarity's misappropriation claim relies on the existence of a contractual relationship between the parties, and involves the same operative facts as its breach of contract claim. *See, e.g. AlliantGroup*, 2017 WL 432810, at *7 (holding misappropriation of trade secrets and tortious inference claims fell within contract's forum selection clause). Similarly, Clarity's other non-contract claims fall

within the Agreement's forum selection clause. *See, e.g., Ghannoum v. Qatar Airways Q.C.S.C.*, No. CIV.A. H-13-2994, 2014 WL 4354436, at *4 (S.D. Tex. Sept. 2, 2014) (finding tortious interference and business disparagement claims fell within contract's forum selection clause).

In sum, the Agreement's forum selection clause is enforceable and Clarity's claims fall within its scope.

### 2. Public Interest Factors

In light of the existence of a valid forum selection clause, the Court considers only the public interest factors of the § 1404(a) analysis. *Atl. Marine*, 134 S. Ct. at 583. The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or applying the foreign law. *Id.* at 580. "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 583. "[S]uch cases will not be common." *Id.* This language from *Atlantic Marine* "suggests quite a high burden of persuasion on the party seeking to avoid enforcement of" a forum selection clause. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 776 (5th Cir. 2016).

Here, OmniWest has not met that burden. OmniWest argues the United States District Court of Arizona has an interest in this litigation because the witnesses and evidence are in Arizona and "the conduct at issue occurred" there. Mot. Dismiss [#9]; *see also* Reply [#19] at 7 ("It is more efficient for the District of Arizona to resolve this dispute because it would avoid out-of-state subpoenas, excessive witness travel, and increased litigation costs."). On the other hand, Clarity has alleged that at least some of the events giving rise to its claims occurred in

Texas: discussions relating to the Agreement and part of the performance of the Agreement. *See* Hurwitz Aff. ¶¶ 7–8. Further, Clarity's office and principals are all in Texas. Resp. [#17] at 3.

After carefully considering the public interest factors, the Court finds transfer is not warranted. OmniWest has not established this is an extraordinary case where the public interest factors outweigh the Agreement's valid forum selection clause.

## C.     Dismissal under *Forum Non Conveniens*

OmniWest also argues in the alternative that the Court should dismiss this case under the doctrine of *forum non conveniens*. Mot. Dismiss [#9] at 10. However, because "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens*," the Court need not perform the substantively identical *forum non conveniens* analysis. *Atl. Marine*, 134 S. Ct. at 580. If anything, transfer under § 1404(a) is a lesser standard than that of *forum non conveniens*. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (Section 1404(a) is "intended to permit courts to grant transfers upon a lesser showing of inconvenience" than *forum non conveniens*.) After failing to establish transfer is appropriate under § 1404(a), OmniWest cannot establish dismissal is appropriate under *forum non conveniens*.

## III.    Subject Matter Jurisdiction

Though neither party discusses whether this Court has subject matter jurisdiction over the case, the issue of subject matter jurisdiction can be raised *sua sponte*. *See* Fed. R. Civ. P. 12(h)(3); *see also Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). A federal court has subject matter jurisdiction over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. § 1332. Section 1332 requires "complete diversity," which means "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side."

*See McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (internal citation omitted); *see also Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (internal quotations and citation omitted). The citizenship of unincorporated entities, such as a limited liability company, depends on the citizenship of all of its members. *Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1015 (2016); *Grey Wolf*, 542 F.3d at 1079.

This Order assumes all members of Clarity are citizens of Texas and all members of OmniWest are citizens of Arizona, notwithstanding the parties' failure to make specific allegations as to their members' citizenship. To ensure subject matter jurisdiction exists, the Court instructs Clarity and OmniWest to file, within 10 (TEN) DAYS of this Order, a list of their respective members and the citizenship of those members as of the date of removal.

## Conclusion

For the foregoing reasons, the Court finds jurisdiction exists over OmniWest and venue is proper in the Western District of Texas.

Accordingly,

IT IS ORDERED that Defendant Emir Muhovic's Motion to Dismiss [#10] is DISMISSED AS MOOT;

IT IS FURTHER ORDERED that Plaintiff Clarity Research and Consulting LLC and Defendant OmniWest, LLC shall file, within 10 (TEN) DAYS of this Order, a list of their respective members and the citizenship of those members as of the date of removal; and

IT IS FINALLY ORDERED that Defendant OmniWest's Motion to Dismiss [#9] is DENIED.

SIGNED this the 26th day of April 2017.

                                                                                     */s/ Sam Sparks*
                                                                        SAM SPARKS
                                                                        UNITED STATES DISTRICT JUDGE